I'm Curtis Pierce here on behalf of the petitioners. The petitioner's main argument on appeal is that the lead petitioner was ill-prepared by his former counsel so that his due process rights were violated. It is argued that the lack of preparation caused the immigration judge to find him evasive, untruthful, and ultimately deny the residency applications of himself and his family. The petitioners testify that his former attorney did not spend sufficient time preparing him for his testimony. And it is further argued that this lack of preparation is evident from the record. The record itself contains an admission of the former counsel admitting to the fact that his office had improperly prepared one of the forms in failing to disclose a criminal conviction of the lead petitioner. The I.J. Didn't the I.J. say, I won't hold that against you? He's – interesting point, Your Honor. He said, I won't hold that against you to the attorney. Well, so why would he hold it against the petitioner, then? Isn't really the issue about lack of preparation. Well, I think that was one factor combined with many that turned the I.J. against the petitioner. And with regard to your earlier question, Your Honor, I think, again, he was not holding it against the attorney, but it looks like he did hold it against the petitioner. The conviction was for a misdemeanor, but it was admittedly a very serious one for sexual battery of a minor. But the important point here is, in spite of the seriousness, the conviction in and of itself did not preclude the petitioner and his family from obtaining status as lawful permanent residents. At most, it could have been construed as a negative discretionary factor to be taken under consideration by the judge. But the appearance of being lying and evasive about it is what cost the petitioner and his family their green cards. Counsel, help us sort through the Lozada factors test. Number one, should we do that here? If so, how do you get through it? And number two, if not, why not? Yes, Your Honor. On appeal to the board, the second attorney asked for the case to be sent back based on Lozada. The board denied this request, arguing that the requirements of Lozada had not been strictly adhered to. One of these requirements is filing a complaint with the State Bar or explaining why not. Now, this Court has held in the Ninth Circuit that strict compliance with that requirement is not necessary when the record is clear on its face that there's been an effective assistance of counsel. And I'm here today to argue against that requirement, strict enforcement of that requirement as I mentioned in my own appeal. One function of immigration attorneys is to help people, defend people from being deported from the United States. And the strict application of Lozada is essentially telling us that in order to accomplish this task, we at times need to be prosecutors and report our colleagues to the State Bar or instruct our clients to do so. And in other words, in order to help someone in trouble, we need to get someone in trouble. So you're arguing against the rule, or are you arguing that you have an exception to the rule? I'm arguing against the rule. I'm arguing that the rule requiring attorneys to report their colleagues to the Bar in order to prove an effective assistance of counsel is unnecessary and too broad, and especially in a case like this when the record is clear on its face that there's been an effective assistance of counsel. Well, those are two different points. One has to do with whether the rule is a good rule and whether we should try to invalidate the rule. The other has to do with whether if it's clear on its face, then the rule doesn't apply. I would argue if it's clear on its face, the rule doesn't apply, but I would also argue that it's a bad rule. I know you're very anxious to tell us it's a bad rule and that lawyers shouldn't have to report wrongdoing by fellow lawyers. They ought to stand together and protect each other in that wrongdoing. I know you're anxious to make that argument, but I think what we're more interested in is whether your client is going to get a reversal of the board decision. Yes. The more important argument here is that if we're going to stick to established precedent, I would say, based on what the Ninth Circuit has already held, in Laurie case, the strict compliance with the rule is not necessary if the ineffectiveness is clear on its face. I'm sorry. I'm looking for the slide here. There's no need to comply with LASADA when the record itself demonstrates that we can receive the ineffective claim, and that was Rodriguez-Laurie's case. The Ninth Circuit, 2002, page 10 of my brief. All right. Good. Okay. Now then, as a result, we were asking this Court to reverse the board's decision and instruct the board accordingly. Good morning, Your Honors. My name is Jacqueline Dryden, and I represent the Attorney General of the United States. In this immigration case, the petitioner sought and was denied, as a matter of discretion, adjustment of status for the following reasons. He was convicted in 1992 of sexual battery of a person under the age of 14, lied about that conviction on at least two immigration applications for relief before an immigration officer, and was not forthright about that conviction before the immigration judge. Was evasive about his place to the judge. When you say he lied about it, that's assuming that he knew that for legal purposes he had still been convicted. Yes, Your Honor. According to the 1993 Immigration and Nationality Act, the conviction for which Mr. Goddard's conviction was a conviction for immigration purposes. Yeah. In addition, Your Honor. Was he a lawyer? I mean, does he know that? No, Your Honor. It takes a lawyer to tell him that, right? In other words, if he thought, if somebody pleads no, though, they often think that they haven't really done anything. It's like parties settle cases and don't admit liability on either side. So a layperson might reasonably have believed that the conviction was no longer a conviction, hadn't been expunged, or something had happened to it, correct? But in his mind, erased it from his record. That was his concept, anyway, that he says. That's what he maintains. That's what he maintains. That's what he maintains, Your Honor. However, Mr. Goddard is an educated individual. He was an accountant in Pakistan, and he came over to the United States on an employment visa. So he's a professional. In addition to that. I wouldn't purport to do accounting, nor would I purport to do medicine. They're all professions. But the question here is, isn't it whether the I.J. made the same conclusion you're urging on us, that he was out and out lying because he appeared evasive or whatever, if the fact is that the attorney had taken him aside and said, look, you'll be asked about any of these prior convictions. Now, you have this prior conviction. This is what it is. This is the kinds of things you have to talk about. He would have said, well, he probably would have said to the attorney, why is that a conviction? Well, Your Honor. And he could have explained it. Why wouldn't that be the kind of counseling that an attorney is supposed to give him? He's a professional or not. Well, in the certified administrative record, there's a pleading or there's a report from the criminal court indicating that he was convicted on page 193 of the certified record. No one's denying that he was convicted. His explanation is, no, they said you're going to make a bargain. You accept the sentence. It will be OK before it goes to the jury. And this is why. Then you said innocent people don't pay fines. You pay the fine. But they told him that he wouldn't have a record. He said he was surprised when he heard he was a wreck because they told him he would have no record. He'd make this bargain and it would all be taken care of. Now, how many people do you think if you went out on the street and said, what's the effect of a NOLO contendery plea? Does that constitute a conviction or not? How many people could answer that question, particularly if their lawyer said to them it'll all be taken care of and it'll all be off your record when it's all over? Your Honor, we only have Mr. Goddard's testimony to this effect, and there is documentary evidence in the record that he would have had regarding his punishment, his suspended sentence, the fact that he had to pay a fine. And that document indicates that he was convicted for a misdemeanor crime. And so for Mr. Goddard to now come into the immigration court and claim that he understood something else when the documentary evidence indicates that he was convicted and he could have read that. All right. Let me ask. This is true. The first time he filed a form was before the expungement. After the expungement, your position is exactly the same, right? He should know that the expungement, even though he gets the expungement, conviction expunged, he should know he's been convicted. Your Honor, to the effect that he's making a claim of ineffective assistance of counsel because he is maintaining that his immigration attorney said that this was not a conviction, that would only go to the part of his testimony at the immigration court. However, there were a number of other instances where he indicated on two immigration forms that he had never been arrested, convicted, cited, or charged for this – for any conviction when, in fact, at the time, he had been. So that was the evidence that the – that was some of the evidence that the immigration judge was relying upon in finding that. And had he been advised by counsel, when he was asked why he filed those forms, he could have explained properly that I thought he did try to explain, but he wasn't counseled on this. He could have explained, well, the reason I did that is because I was told and I understood that after you make a NOLO contender a deal, that from then on, you can say when it's all over that, yes, I haven't been convicted, that that's the effect, if that's what you believe. Now, maybe you think it's unreasonable for people who enter into some of these odd transactions with states that the federal government doesn't recognize as, you know, taking care of a conviction. We have a right to say, you know, despite what the state says, you're still convicted. But, you know, people who are ordinary citizens, let alone immigrants, may not understand the legal system that clearly. And maybe you could explain what happened a little better if after you hired a lawyer, he talked to you and told you, here are the issues of the case. Let's discuss what the proper answer is. Here is the law. Your Honor, Mr. Goddard's attorney went out of his way. He did his job in attempting to vacate Mr. Goddard's conviction after it was learned that there was this conviction at a, I think at a prior master calendar hearing. He went forward. He vacated the conviction. And it was at the next hearing on cross-examination where the trial attorney brought forward the evidence on the first adjustment of status application in which Mr. Goddard then had indicated that he had never been arrested. So it wasn't that his current attorney had – there's no information on the record that Mr. Goddard's attorney told him to not discuss the conviction or told him how to test it. It told him to lie about this conviction. The evidence actually points to the fact that he wanted Mr. Goddard, his client, to be forthcoming about this conviction in order to apply for adjustment of status and to be granted such relief. It was only upon cross-examination when the trial attorney asked about the previous lies before on the immigration forms and before the immigration – before the immigration judge. It broke down what? When he tried to explain why he thought that his null or contender plea and what his lawyer had told him meant that he would never after that have to say anything about the crime, that it was all taken care of and the record was wiped clean. And that's what you're saying, that he didn't need advice on, didn't need counseling, didn't need a discussion with a lawyer about how to testify on that? Your Honor, he didn't need advice on how to testify untruthfully. Well, why does anybody ever need a lawyer? All they've got to do is tell the truth. They should be telling the truth, Your Honor, but – I think we ought to have criminal trials without defense lawyers. Everyone tell us the truth. And certainly the defendant should just tell the truth. Well, Your Honor, the Petitioner's Counsel during the hearing had brought – had elicited the information about the conviction and had – had his client testify that he had satisfied the conditions of probation, had paid the fine, was notifying the State of his changes of address, and that he had been rehabilitated. All this evidence was brought out. It was only upon cross-examination that Mr. Gridori's testimony broke down, and that was because the first adjustment of – first adjustment of status application was brought forth by the trial attorney, and Mr. Gridori, who had himself filed that application without the assistance of counsel, indicated that he had never been fined, sentenced, or convicted. And it was only a year before that he had actually paid a $450 fine for this crime. So for him to say he was not aware of this or that some bargain erased it flies in the face of the question that he was asked regarding whether or not he had ever been fined. May I have a closing statement, Your Honors? Sure. This Court lacks jurisdiction over discretionary denials of adjustment of status in transitional cases like this one. If, however, the Court does find that it has jurisdiction, then it should conclude that the factors that the immigration judge relied upon in denying adjustment of status as a matter of discretion are eminently supported by the record. Finally, the Court should find that Petitioner failed to comply with the Board's  And in addition, he did not establish that he was prejudiced by such counsel. For these reasons, the Government respectfully requests that the Court dismiss Mr. Gridori's petition for review. Thank you. Thank you, counsel. Brief rebuttal. The Government has pointed out in its brief and oral argument that Mr. Gridori is educated. He is an accountant. Let me play devil's advocate. Let's say on his 1993 application he intentionally wanted to lie to conceal that conviction. Does that stand to reason when the Government has taken his fingerprints? I think his education supports the argument that he was indeed confused. I have nothing further. Well, could you address what counsel just argued, which is that the 1996 hearing, after all of this had surfaced, then he was on and asked about whether he'd ever paid a fine? Right. He was asked. And denied that he was. Is that it? Yes. They brought to the 1996 hearing the attorney for the Government. They asked him at the 1996 hearing if he had paid a fine? Where is that? They asked questions about his 1993 application. Okay. They didn't ask him in 1996 whether he'd ever paid a fine. I don't believe so. They may have. I guess I misunderstood. She said on cross-examination it broke down. It broke down because they had asked about his 1993 application where he had indicated he had not been convicted. Now, he had a couple of applications. He was talking about a fine, saying he had paid $450. I guess I misunderstood the argument. And again, in 1993, his asylum application was prepared by the military. Right. And that I understand. Okay. Thank you. Thank you, Your Honor. Thank you, Your Honor. The case is arguably submitted. Thank you.
judges: Reinhardt, O'scannlain, Fisher